**STATE of Maine**

v.

**Ashley G. ESTABROOK.**

Supreme Judicial Court of Maine.

May 21, 1968.

Warren E. Winslow, Asst. County Atty., Portland, for appellant.

Basil A. Latty, Portland, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal from conviction for breaking, entering and larceny upon grounds of admissibility of evidence, refusal of a directed verdict and refusal to give requested instructions. The admission of the challanged evidence came after pre-trial hearing and denial of a motion to suppress the same.

The record before us includes the evidence on the motion to suppress, in which was raised the validity of a search of the appellant's person, which the State defends as being incidental to a valid arrest.

The record of the hearing upon the motion to suppress evidence obtained upon search of the person of the accused establishes the following facts:

At about 2 o'clock in the morning of the day in question a person living across the road from the store building which was forcibly entered, heard noises sufficient to awaken her and she observed three per-

sons leaving the store building with material and of such physical characteristics that she was able to describe them generally to the State Police upon their arrival in response to her call. Officer "A" confirmed the forcible entry of the building through a broken window, observed blood in the interior of the store by the broken window and outside the store by the broken window, noticed tall wet grass with some burdock plants. A search of the area revealed some of the stolen goods, and while Officer "B" was in the vicinity of these goods he heard a motor vehicle with its motor "revving up" approach an intersection of two highways in the immediate vicinity and entered his vehicle to make an interception. The vehicle which he was seeking to intercept reached the intersection ahead of him, ignored a stop sign set against it and proceeded away from the officer. The officer pursued, overtook and stopped the vehicle, asked the operator for his license and at the same time observed within the vehicle, three persons answering the description given him, and one with a bleeding hand and all with wet and muddy shoes and trousers to which were attached some burdocks. He thereupon informed the subjects that he was arresting them on the grounds of breaking, entering and larceny in the nighttime, ordered them to dismount from the car and made a brief search of their persons for weapons. At this time State Officer "A" joined Officer "B," the three subjects were returned to the scene of the break temporarily and then taken to the County Jail in Portland some 17–20 miles distant, where they were thoroughly searched by Officer "C" in the presence of Officer "B" and amounts of money came to light, including some which was identified by the operator of the store as having been in the store on the day before the break. The money taken from the person of the appellant was the evidence to which the motion to suppress was aimed, the motion was denied and the money subsequently admitted into evidence at trial. Of the three persons

apprehended, one was a juvenile, two were convicted, of which two, one comes to this Court on appeal.

■ The issues upon the points of appeal dealing with this phase of the case turn upon (a) the validity of the arrest, and (b) whether the search which yielded this money was incidental to that arrest.

"(A)n officer may arrest upon reasonable grounds of suspicion that a felony has been committed and that the person arrested was guilty of the felony, * * *." Therriault v. Breton, 114 Me. 137, 142, 95 A. 699, 701.

Officer "B" personally saw the evidence of the break, the fleeing car, the occupants of the car complying with the description which he had received, evidence on the clothing of the occupants of the car consistent with its exposure to wet grass, plus burdocks attached to the trouser legs, and one of the subjects with a bleeding hand, all of which made suspicion of their guilt very reasonable. The arrest was valid. See State v. Kohler 424 P.2d 656 (Wash. 1967); and Wilson v. Commonwealth, 403 S.W.2d 705, [1] 707 (Ky.1966).

■ Without delay and while the suspects were in the uninterrupted custody of Officer "B," they were taken to County Jail and searched by Officer "C" in the presence of Officer "B" some hour and thirty-seven minutes after the arrest. There is no evidence that there was any place for depositing the prisoners nearer than the reference jail, the custody following apprehension was continuous and the search at the jail was immediately prior to incarceration therein. The search was reasonable and incidental to the arrest, Commonwealth v. Bowlen, 223 N.E.2d 391, [2–3] 393 (Mass.1967). Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), a leading case on the subject, speaks of a permissible search in connection with a valid arrest as one "contemporaneous"

with the arrest, [4–6] page 883. Stoner v. State of California decided the same day and reported in 376 U.S. 483, 84 S.Ct. 889 under [2–5] page 891, 11 L.Ed.2d 856, speaks of a permissible search as one "substantially contemporaneous" with the arrest.

"The seizure of the tools, * * * as incidental to the original arrest is not obscured by the failure of the officers to take these articles * * * at the time of the arrest instead of waiting until the car in which they * * * reposed reached the (police) station." Price v. United States, 121 U.S.App.D.C. 62, 348 F.2d 68, [2] 70 (1965). Cert. den. 382 U.S. 888, 86 S.Ct. 170, 15 L.Ed.2d 125.

"The search * * * was done immediately after the defendant had been placed in custody and was but a continuing act carried on as soon as reasonably could be done considering * * *, the place and circumstances under which the arrest took place." United States v. Theriault, 268 F.Supp. 314, [7] 324 (District Court, Arkansas, 1967).

The motion to suppress the evidence there described was correctly denied and the admission of the evidence without error.

■ At the close of the case, defense moved for a directed verdict, grounded upon insufficiency of proof of ownership of the building in which the entry was made and ownership of the personal property taken. The indictment alleged the building to be the property of "one Fay Corporation" and the personal property taken therefrom to be owned by Maynard Pierce. Both allegation and proof is required to show that the accused was taking property to which he had no right. State v. Small, 156 Me. 10, 13, 157 A.2d 874; and State v. Oliver, Me., 225 A.2d 398.

■ In connection with the ownership of the building, a witness "H," as principal stockholder in the Fay Corporation, testified as to the ownership of the building. This was competent evidence to prove such fact, subject, however, to the infirmity of being expressed in the present tense as of the day of trial, not the date of the "break" some three and one-half months earlier. Ownership as of the date of trial was irrelevant, and the statute, 15 M.R.S.A. § 752, which provides that:

"In an offense in any way relating to real or personal estate it is sufficient and not a variance if it is proved at the trial that, when the offense was committed, the actual or constructive possession of or the general or special property in the whole of such estate or in any part thereof was in the person or community alleged in the indictment to be the owner thereof."

offered no remedy for this deficiency in the testimony of "H." There was, however, testimony that Maynard and Katherine Pierce were tenants in that property and had been from April of 1966, which antedated the "break" and from which the jury was competent to conclude that Fay Corporation had a landlord interest in the property on the day of the offense, which would satisfy the statute.

With relation to the personal property the jury was justified in determining that Maynard Pierce had a special property interest in the goods taken. A witness, Katherine Pierce, testified that at the time of the break she and her husband were renting the store from "H," above mentioned, were operating it together and were buying the stock in trade from "H." The challenge of the sufficiency of proof of Maynard Pierce's necessary property interest in the goods taken has to be based upon the absence of a flat statement that Maynard Pierce was Katherine Pierce's husband. This alleged void is filled by the testimony of "H" who identified the tenants as Maynard and Katherine Pierce, and Mrs. Pierce's frequent reference to the

operation of the store by her husband and herself, as tenants of "H," and, as husband and wife, their installment purchase of the stock in trade. The testimony supported the inference that beyond a reasonable doubt Maynard and Katherine Pierce were husband and wife, and were in possession of the store and its contents at the time of the unlawful entry.

The appellant's attack on the proof of ownership of the building and its contents would have been obviated by a simple question in respect to each of the building and its contents.

Appeal denied.

DUFRESNE, J., did not sit.